Ex parte Charles PORTER.

No. 71177.

Court of Criminal Appeals of Texas,
En Banc.

March 25, 1992.

Charles Porter, pro se.

John Vance, Dist. Atty. and Teresa Tolle, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty. and Jeffrey L. Van Horn, Asst., State's Atty., Austin, for the State.

## OPINION ON STATE'S MOTION FOR REHEARING

MALONEY, Judge.

This case is on the State's motion for rehearing in cause number 71,177. We previously granted Charles Porter, applicant herein, habeas corpus relief in an unpublished opinion delivered February 27, 1991. 803 S.W.2d 720.

Applicant was convicted by a jury of aggravated robbery and was sentenced to life imprisonment. V.T.C.A. Penal Code, § 29.03. In this application, applicant challenges the prior conviction of forgery enhancing the punishment.[1] The offense of forgery is committed if a person "forges a writing with [the] intent to defraud or harm another." V.T.C.A. Penal Code, § 32.21(b). Under section 32.21:

(1) "Forge" means:

(A) to alter, make, complete, execute, or authenticate any writing so that it purports:

(i) to be the act of another who did not authorize that act; ...

(C) to possess a writing that is forged within the meaning of Paragraph (A) with intent to utter it ...

V.T.C.A. Penal Code, § 32.21(a)(1)(A)(i), (a)(1)(C).

The forgery indictment used to enhance applicant's punishment alleged that applicant "intentionally and knowingly with in-

tent to defraud and harm another, possess[ed] with intent to pass, a forged writing knowing such writing to be forged of the tenor following: [a copy of the check]." The indictment did not allege that the forged instrument "purported to be the act of another who did not authorize the act" as stated in V.T.C.A. Penal Code, section 32.21(a)(1)(A)(i).

In our unpublished opinion, we held that applicant's punishment was improperly enhanced because the indictment in the prior forgery conviction failed to allege an essential element of forgery, namely that the forged instrument "purported to be the act of another who did not authorize the act," and that the prior forgery conviction was, therefore, void since it was predicated on a fundamentally defective indictment.[2] This Court relied upon *Minix v. State,* 579 S.W.2d 466 (Tex.Cr.App.1979).

The State contends that we should reconsider our opinion in this case and overrule *Minix.* In support of its contention, the State argues that a person commits forgery if he (1) forges (2) a writing (3) with intent to defraud or harm another, V.T.C.A. Penal Code, section 32.21(b), and that any allegation in the indictment that the forged instrument "purported to be the act of another who did not authorize the act" is surplusage. We agree and we withdraw our prior unpublished opinion in this case and deny relief.

In *Minix* the indictment alleged that the appellant "did then and there knowingly, with intent to defraud and harm, forge, by possession with intent to utter the same, a writing as follows: [a copy of the check]." *Minix,* 579 S.W.2d at 466. On the State's motion for rehearing, this Court held that "use of the word 'forge' in the indictment was insufficient to incorporate by reference the missing element [that the writing purports 'to be the act of another who did not authorize the act']." *Id.* at 467 (opinion on State's motion for rehearing). By analo-

---

1. V.T.C.A. Penal Code, § 12.42(d).

2. Defects in indictments presented after December 1, 1985, the effective date of Article 1.14(b), must be raised pretrial or they are waived. *Stu-*

*der v. State,* 799 S.W.2d 263 (Tex.Cr.App.1990). *Studer* does not apply to this case because the forgery indictment was presented in 1979.

gy, we relied upon *Reynolds v. State*, 547 S.W.2d 590 (Tex.Cr.App.1977), a theft case, in reaching our decision.

In *Reynolds*, this Court held that use of the word "unlawful" in the theft indictment was insufficient to supply the missing element, namely "without the owner's effective consent." At that time the theft statute read as follows:

(a) A person commits an offense if, with intent to deprive the owner of property:

(1) he obtains the property unlawfully; or

(2) he exercises control over the property, other than real property, unlawfully.

(b) Obtaining or exercising control over property is unlawful if:

(1) the actor obtains or exercises control over the property without the owner's effective consent; or

(2) the property is stolen and the actor obtains it from another or exercises control over the property obtained by another knowing it was stolen.

*Reynolds*, 547 S.W.2d at 593–94 (opinion on State's motion for rehearing) (quoting V.T.C.A. Penal Code, § 31.03 (1974)).

Similarly, in *Casey v. State*, 633 S.W.2d 885 (Tex.Cr.App.1982) this Court in comparing section 31.03(b)(1) with section 31.-03(b)(2) [3] found that the legislature created one offense but with two separate and distinct ways of committing the offense. Therefore, a theft indictment had to allege whether the appropriation was unlawful because either the property was taken (1) without the owner's effective consent or (2) the actor knew the property was previously stolen. *Casey*, 633 S.W.2d at 887.

However, we expressly overruled *Casey* in *McClain v. State*, 687 S.W.2d 350 (Tex. Cr.App.1985), stating that the decision in *Casey* was contrary to "the Legislature's express purpose in consolidating the theft

offenses" because it "attempted to elevate mere matters of proof to 'distinct elements' comprising 'two separate' offenses...." *McClain*, 687 S.W.2d at 355.

We further criticized *Casey* in *Berg v. State*, 747 S.W.2d 800, 807 (Tex.Cr.App. 1988) (opinion on Appellant's motion for rehearing). "The *Casey* opinion was flawed in that it confused the elements ... of theft with evidentiary matters constituting proof of the commission of the offense." *Berg*, 747 S.W.2d at 809. We further stated:

The State need not plead the manner of acquisition or the circumstances surrounding the offense. The manner of acquisition or the circumstance surrounding the offense are merely evidentiary matters and there is no requirement that the State plead evidentiary matters. *Thomas v. State*, 621 S.W.2d 158 (Tex. Cr.App.1981); *McClain v. State*, 687 S.W.2d 350 (Tex.Cr.App.1985).

The State need only prove the offense as stated in Section 31.03(a). To plead ... the offense in terms of Section 31.03(b)(1) and (2) is to plead evidentiary matters which are surplusage and in point of fact give the accused more notice than is constitutionally required. [citing *Thomas*].

*Id.*

In *Ex Parte Luna*, 784 S.W.2d 369 (Tex. Cr.App.1990), we cited extensively from *Berg* and overruled *Reynolds*. In overruling *Reynolds*, we noted that:

*McClain* not only overruled *Casey* expressly, but also overruled *Reynolds*, *sub silentio*. As a result, in theft cases, the State need only allege that the person (1) unlawfully appropriated property (2) with the intent to deprive the owner of the property. Failure to allege that the property was appropriated without the owner's effective consent does not

---

**3.** The theft statute, as it exists today and at the time of the *Casey* decision, is substantively the same as the one in effect when this Court decided *Reynolds*. Section 31.03 provides:

(a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property.

(b) Appropriation is unlawful if:

(1) it is without the owner's effective consent; or

(2) the property is stolen and the actor appropriates the property knowing it was stolen by another.

render the indictment fundamentally defective.

*Ex Parte Luna,* 784 S.W.2d at 371.

Thus, the controlling authorities in this area are *Luna, Berg,* and *McClain.* The only elements of theft are those set forth in V.T.C.A. Penal Code, section 31.03(a). The definitional provisions set forth in V.T.C.A. Penal Code, section 31.03(b) are merely evidentiary matters that the State need not plead.

■ Similarly, the only elements of forgery are those set forth in V.T.C.A. Penal Code, section 32.21(b). The State only has to allege that the person "forge[d] a writing with intent to defraud or harm another." V.T.C.A. Penal Code, § 32.21(b). Any allegation of V.T.C.A. Penal Code, section 32.21(a) [4] constitutes an evidentiary matter. Thus, absent a motion to quash for lack of notice, the State is not required to allege in the indictment that the forged instrument "purported to be the act of another who did not authorize the act" since such allegation does not constitute an element of the offense of forgery.[5] As Judge Clinton pointed out in his dissent to *Minix,* "the gist of the offense [of forgery] is [the] 'intent to defraud or harm' anoth-

er." *Minix,* 579 S.W.2d at 469 (Clinton, J., dissenting) (footnote and citation omitted).

*Minix* relied upon *Reynolds* and wrongly elevated an evidentiary matter to the status of an element.[6] We have disavowed the rationale of *Reynolds* and now overrule *Minix* as well.

Accordingly, we hold that the indictment in the prior forgery conviction is not fundamentally defective for failing to allege that the forged instrument "purported to be the act of another who did not authorize the act." Because the indictment is constitutionally sufficient, the relief sought is denied and applicant's conviction is affirmed.

BAIRD, Judge, dissenting.

In *Minix v. State,* 579 S.W.2d 466 (Tex. Cr.App.1979) (op. on Reh'g.), we placed a particular construction on the Texas forgery statute, namely that the simple use of the word "forge" in the indictment was insufficient because Tex.Pen.Code Ann. Sec. 32.21(a)(1)(A)(i) required the indictment to allege that the purported maker did not authorize the act of making the writing. Indictments which lacked that allegation were fundamentally defective. *Id.* at 467.

---

**4.** Section 32.21(a) provides:

> For purposes of this section:
> (1) "Forge" means:
> (A) to alter, make, complete, execute, or authenticate any writing so that it purports:
> (i) to be the act of another who did not authorize that act;
> (ii) to have been executed at a time or place or in a numbered sequence other than was in fact the case; or
> (iii) to be a copy of an original when no such original existed;
> (B) to issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged within the meaning of Paragraph (A) of this subdivision; or
> (C) to possess a writing that is forged within the meaning of Paragraph (A) with intent to utter it in a manner specified in Paragraph (B) of this subdivision.
> (2) "Writing" includes:
> (A) printing or any other method of recording information;
> (B) money, coins, tokens, stamps, seals, credit cards, badges, and trademarks; and
> (C) symbols of value, right, privilege, or identification.

**5.** By this decision we are not abrogating the mandates of articles 21.02(7), 21.03, and other provisions of chapter 21 of the Texas Code of Criminal Procedure. A timely motion to quash the indictment would require the State to plead the matters in V.T.C.A. Penal Code, § 32.21(a).

**6.** The dissent criticizes us for not mentioning that *Minix* also cited *Smith v. State,* 162 Tex. Cr.R. 132, 282 S.W.2d 876 (1955). The dissent contends that *Minix* relied upon *Smith* rather than *Reynolds* and, therefore, the fact that we have overruled *Reynolds* is irrelevant. However, *Smith* was decided under the 1925 penal code which states in pertinent part: "He is guilty of forgery who without lawful authority, and intent to injure or defraud, shall make a false instrument in writing purporting to be the act of another[.]" Art. 979, V.A.P.C. (1925). Under that code, the phrases "without legal authority" and "purporting to be the act of another" are essential elements of the offense of forgery. The dissent is correct in the assertion that similar language has been incorporated into the new code; however, as we have previously stated in this opinion, under the new penal code, the phrase "purported to be the act of another who did not authorize the act" is no longer an essential element of forgery.

With the exception of Judge Clinton's dissent in *Minix*, which was joined by only one other judge, and Judge Clinton's dissent in *Landry v. State*, 583 S.W.2d 620 (Tex.Cr.App.1979) (op. on Reh'g.), which was joined by two other judges,[1] our decision in *Minix* has not been seriously questioned by this Court in all of the intervening years.[2]

The majority makes no attempt to distinguish the instant case from past cases where *Minix* was applied. Additionally, our original opinion in this case is unpublished and has no precedential value. Tex. R.App.Pro. 90(i). *See* Appendix. By overruling *Minix* in the instant case, which has no appreciable difference from previous cases where *Minix* was applied, we encourage the bar to continue to urge previously rejected arguments to settled areas of law in the hope that someday this Court will arbitrarily overrule itself. We should not encourage that practice as "the labor of judges would be increased almost to the breaking point if every past decision could be reopened in every case." Benjamin N. Cardozo, *The Nature of the Judicial Process*, New Haven, Yale UP, 1921 (p. 149). Therefore, for the following reasons, I respectfully dissent to the majority's decision to overrule the thirteen year old precedent established in *Minix*.

### I.

First, overruling *Minix* will add nothing to the jurisprudence of this State because *Minix* has no application after the amendments to Art. 1.14, Tex.Code Crim.Proc. Ann. and Art. V, Sec. 12, Tex. Const., concerning defects in charging instruments. *See, Studer v. State*, 799 S.W.2d 263 (Tex. Cr.App.1990), where we interpreted those amendments. In *Ex parte Morris*, 800 S.W.2d 225, 227 (Tex.Cr.App.1990), we applied *Studer* to a felony forgery conviction in which appellant failed to object to her indictment prior to trial. Because the indictment was returned after December 1, 1985, the effective date of Art. 1.14(b), supra, the defendant waived the right to object on appeal to the defect by failing to object to the indictment prior to trial. Therefore, only pre–1985 *Minix* indictments are fatally defective. Post–1985 *Minix* indictments are not defective unless the defendant raises the complaint prior to trial. Consequently, the majority's opinion overruling *Minix* adds nothing to our jurisprudence. Accordingly, appellant should receive the benefit of *Minix* because his indictment was returned before December 1, 1985 and *Minix* should be left to meet its death as a result of the mortal wounds inflicted by the 1985 amendment to Art. 1.14(b).

### II.

Second, by overruling *Minix*, the majority rejects the time honored doctrine of *stare decisis*.

### A.

"One of the principles of our legal system is that when a point of law has once

---

**1.** Judge Onion also dissented to the Opinion on Appellant's Motion for Rehearing in *Landry*, but he did not state his reasons for doing so, nor did he join Judge Clinton's dissent. After *Landry*, Judge Clinton found himself constrained to follow *Minix*. In *Ex Parte Davis*, 583 S.W.2d 794, 795, n. 2 (Tex.Cr.App.1979), Judge Clinton, writing for the Court, noted "That the writer no longer agrees with the original *Minix* opinion, as explicated in my dissenting opinions in *Minix* on State's motion for rehearing and today in *Landry* on appellant's motion for rehearing, is of no moment. The Court en banc has clearly declared the law and I must and do defer to its judgment." In *Ex Parte Morren*, 587 S.W.2d 427, 428, n. 3 (Tex.Cr.App.1979), Judge Clinton includes essentially the same comment. In *McFarland v. State*, 605 S.W.2d 904, 906 (Tex.Cr. App.1980), Judge Clinton writes in his concurrence "the majority relies on *Minix*, ... so I am

obliged to concur" noting that "with the greatest reluctance I am bound to defer to the collective judgment of the en banc majority." *Id.* n. 3. It would seem that Judge Clinton would be no less constrained to concur with the result in *Minix* now as he was then.

**2.** The only other dissent of note is the lone dissent by Judge McCormick in *Cotten v. State*, 626 S.W.2d 531, 532 (Tex.Cr.App.1981) (McCormick, J., dissenting). In his dissent, Judge McCormick said: "This holding points out the need not only for a re-examination of the doctrine of fundamental error in indictments generally, but also the necessity to revisit the prior holding of this Court in *Minix* ..." That problem has now been cured. *See, Studer v. State*, 799 S.W.2d 263 (Tex.Cr.App.1990), infra.

been settled by decision of the highest court of the state, the decision becomes the law of the state and forms a precedent that is not afterward to be departed from. This is known as the doctrine of *stare decisis*." 16 Tex.Jur.3d *Courts*, 451, Sec. 119. The doctrine of *stare decisis* is "based on public policy and sound judicial administration, which require that the courts observe a proper respect for the prior decisions of the highest court." *Id.*, at 452.

Eighty years ago in *Morris v. State*, 64 Tex.Cr.R. 498, 142 S.W. 876, 877 (1912), we held:

> Where this court has held for a number of years to a given construction of the law, we feel bound thereby, and, if any change is to be made in the rule of decision adhered to for any great length of time, this is to be exercised by the legislative branch of the government, and not this court. We have followed, and are now following, the decisions of this court in many instances where we think it for the best interest of the state that the law was otherwise than as held by this court; yet, as we have heretofore said, the bar and the people of this state are entitled to know what is the law, and that it should not be subject to change by the mere opinion of one who is fortunate enough to be elected to this high position. As said in the Lewis Case, 127 S.W. 808: "For the reasons given here, we feel that at this late date to sweep aside the established rule and unsettle the law still further would be, if not judicial usurpation, at least without sufficient warrant in law and utterly inexcusable, and to proclaim ourselves as unworthy to sit on this high tribunal. It should never be forgotten that this is a land where the law reigns supreme. Uniformity and certainty of decision is of the highest importance. We are not so much to declare our personal views of what the law ought to be, but to lay down with as much definiteness and certainty as may be what it is, and, when so adjudged, to enforce it with inflexible fidelity, without passion, and without weakness. If, com-

ing to this high position of power and responsibility, I may, moved by a mere personal opinion, in my day and time, unsettle and undo the work of the great men who have preceded me, consistent, coherent, and undoubted from the day when I was yet a briefless lawyer, the man who on the morrow takes my place will have the same warrant to undo and unsettle the rules we establish, and so on to the end of time."

Seventy-five years ago in *Gearheart v. State*, 81 Tex.Cr.R. 540, 197 S.W. 187, 188–189 (1917), we held:

> Where the decisions of the same court upon a given question are conflicting, it often becomes necessary to determine which is supported by the better reason, and to overrule the cases holding to an opposite view, *but when a rule has been once deliberately adopted and declared and uniformly followed, it should not be abandoned except upon the most urgent reasons.*[3]

Through the years this Court has recognized that the decision to overturn one of its own precedents should not be made lightly. "We recognize the reluctance with which one in a judicial position should approach a line of decisions of long standing with the purpose of setting aside the doctrines therein laid down, some grey with antiquity, and the doctrine of *stare decisis* should bear heavily on retaining the integrity of such decisions." *Wolfe v. State*, 147 Tex.Cr.R. 62, 178 S.W.2d 274, 281 (1944) (op. on Reh'g.). Noting that "[t]he cure is worse than the disease," the Court in 1973 refused to overturn a precedent construing a statute, saying that "the legislature has convened in three regular sessions since the decision in *Morris [v. State*, 411 S.W.2d 730 (Tex.Cr.App.1967) ], without indicating their disapproval by amendment to the statute." *Jones v. State*, 496 S.W.2d 566, 573 (Tex.Cr.App.1973) (op. on Reh'g.).

Additionally, in *Lewis v. State*, 58 Tex. Cr.R. 351, 127 S.W. 808, 812 (1910), this Court held:

> There is, however, another rule well understood among lawyers, and of such

---

**3.** Unless otherwise indicated, all emphasis herein is supplied by the author.

general acceptance as to admit of no controversy, which it would seem in fairness would compel a holding adverse to the views of the state. That rule is thus stated in Black on Interpretation of Laws, p. 369: "When the Legislature revises the statutes of the state, after a particular statute has been judicially construed, without changing that statute, it is presumed that the Legislature intended that the same construction should continue to be applied to that statute." The Legislature has convened six regular sessions since *Minix* and the statute has remained unchanged.

Present members of this Court have, from time to time, acknowledged the importance of the doctrine of *stare decisis*. Judge Clinton said: "During the more than one hundred years of its tenure this Court, like every conscientious appellate court, has endeavored to follow the ancient doctrine of '*stare decisis et non quieta movere*'—to adhere to precedents, and not to unsettle things which are established—and to reconcile and harmonize divergent applications of legal principle that inevitably are made from time to time." *Sattiewhite v. State*, 600 S.W.2d 277, 280 (Tex.Cr.App. 1980) (op. on Reh'g.) (Historical footnote omitted).[4] Just recently, Judge Campbell said in the context of misjoinder of multiple offenses in a single indictment, "I think we should, as a matter of practicality and *stare decisis*, continue with the rule adopted just three years ago ..." *Ex parte Pena*, 820 S.W.2d 806, 810 (Tex.Cr.App. 1991) (Campbell, J., concurring and dissenting, Clinton, Baird, and Benavides, JJ.,

join). Judge Miller, in an inventory search situation, pondered whether a decision was "motivated by *stare decisis* or if it is but a harbinger of things to come—a decision motivated by personal philosophy." *Kelley v. State*, 677 S.W.2d 34, 39 (Tex.Cr.App. 1984) (Miller, J., dissenting, joined by Clinton, J.). One might ask the same question today.[5]

### B.

Speaking for a majority of the United States Supreme Court, Chief Justice Rehnquist stated:

*Stare decisis* is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process. [Citations omitted.] Adhering to precedent "is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than it be settled right." [Citations omitted.]

*Payne v. Tennessee*, —— U.S. ——, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720 (1991). *Payne* was viewed as a controversial decision, in part, because of the "radical new exception[s] to the doctrine of *stare decisis*" carved out by Chief Justice Rehnquist. *Id.*, 111 S.Ct. at 2619 (Marshall, J., dissenting).

In *Payne*, Chief Justice Rehnquist listed several exceptions in which the Supreme Court was not constrained to follow the doctrine of *stare decisis:* (1) constitutional

---

**4.** In *Sattiewhite* we overruled the sixty-two year old precedent established in *Moore v. State* [84 Tex.Cr.R. 256, 206 S.W. 683 (1918)]. We did so, in part, because *Moore* was followed only four times making it, in Judge Clinton's view, a weak candidate "for that degree of respect implicit in following the doctrine of *stare decisis.*" *Sattiewhite,* 600 S.W.2d at 281. The same, however, cannot be said about *Minix,* which has been followed many times in its thirteen year history, making it a much stronger candidate for "that degree of respect implicit in the doctrine of *stare decisis.*" I do not agree that precedent should be retained simply on the basis of the number of times it has been cited; but, if that criterion, which the Court used in *Sattiewhite,* is

applied to the instant case, *Minix* should be upheld.

**5.** In his dissent, Judge Miller gives us the *Black's Law Dictionary* definition of *stare decisis.* Judge Miller also quotes the second book of the *Dune* trilogy, in an attempt to wax literary on the subject of *stare decisis,* as follows: "Law—our highest ideal and our basest nature. Don't look too closely at the law. Do, and you'll find the rationalized interpretations, the legal casuistry, the precedents of convenience." (Footnoted as "Muad'dib speaking to his royal concubine Chani; F. Herbert, Dune Messiah, p. 212 (book two in the Dune Chronicles 1975)." *Kelley*, 677 S.W.2d at 41, n. 7.

cases, because in such cases "correction through legislative action is practically impossible;" (2) cases involving procedural and evidentiary rules, as opposed to cases involving property and contract rights, where reliance interests are the greatest; (3) opinions decided by narrow margins involving "spirited dissents" challenging the basic underpinnings of those decisions; (4) decisions which were questioned by members of the Court in later decisions; and (5) decisions that have defied consistent application by the lower courts. *Id.*, at 2610–2611. [Citations omitted.]

In my opinion, the *Payne* Court "ignored the important function of *stare decisis* in maintaining the rule of law" in making these exceptions. *The Supreme Court—Leading Cases*, 105 Harv.L.Rev. 177 (1991) (Referring to the *Payne* decision.). However, even under Justice Rehnquist's exceptions to *stare decisis*, *Minix* should not be overruled because *Minix* does not fit within any of the *Payne* exceptions. First, *Minix* does not involve a constitutional question and its holding has always been susceptible to "correction through legislative action." However, the Legislature has not seen fit to correct our interpretation of *Minix* or the line of cases that preceded it under "the Old Code." *See*, Art. 979, V.A.P.C. (1925). Second, as Judges on the highest criminal court of Texas, we should be loathe to follow the United States Supreme Court's suggestion that reliance interests are greater in cases involving contract and property rights than cases involving individual rights. We should reject the notion that we are free to arbitrarily overturn evidentiary rules or procedural rules promulgated by the Legislature. Such actions would harm not only the reputation of this Court, but also the rule of law itself. "[Such action] turns *stare decisis* into a doctrine of judicial politics, not law, holding that like cases need *not* be treated alike, as long as they are treated by different judges." 105 Harv.L.Rev. at 184 (Emphasis in original). Third, *Minix* was *not* decided by a narrow margin but rather a margin of 7–2. Fourth, *Minix* has been seriously questioned only once in the case's thirteen year history. *See, Landry, supra.*

Fifth, there is no indication that the *Minix* decision has defied consistent application by the courts of appeal.

### C.

Before we overrule our own precedents, we should at the very least establish that the earlier decision was clearly erroneous, *and* that we now have some special justification that requires overturning that precedent. "This standard requires the Court, in addition to arguing its position on the merits, to demonstrate one of three things: that changed conditions undermine the basis of the precedent, that the lower courts have been unable to apply the old rule, or that subsequent precedents conflict." 105 Harv.L.Rev. at 182.

"Changed conditions" means social conditions; only thirteen years have passed since our decision in *Minix*, and in that time I find no social change that would mandate overruling *Minix*. While the rising crime rate could arguably be proffered as a grave social change, such a circumstance would not be effectively addressed by arbitrarily changing the law in the present case in order to prevent a single non-violent offender from obtaining relief.

The *Minix* rule is easily applied. What could be easier than requiring an indictment include the allegation, "which purports to be the act of another?"

Finally, there is no conflict between the *Minix* rule and subsequent precedents. It is not enough that *Reynolds*, a case cited by the majority as analogous to *Minix*, has been overruled. The majority ignores the more important and compelling basis of our decision in *Minix*, namely *Smith v. State*, 282 S.W.2d 876 (Tex.Cr.App.1955), which was cited as controlling authority. The majority opinion in *Minix* on State's motion for rehearing states:

> The element of forgery under Art. 979, V.A.P.C. (1925) of "without lawful authority" has been brought forward in V.T.C.A. Penal Code Sec. 32.21(a)(1)(A)(i), which requires that the purported maker "did not authorize the act" of making the

writing. Not only was the indictment here defective on the basis urged in the motion to quash, but under *Smith* it was fundamentally defective.

*Minix,* 579 S.W.2d at 467.

Art. 979 provided the requirement that the purported maker did not authorize the act of making the writing. The incorporation of Art. 979 into the "new" Penal Code constitutes a special reason to refrain from overruling *Minix.* The "abandonment of *stare decisis* is particularly disturbing because the applicable statute ... has remained unchanged in substance since adoption of the Old Code of Criminal Procedure." *Ex parte Edone,* 740 S.W.2d 446, 449–450 (Tex.Cr.App.1987) (Clinton, J., dissenting). The legislature effectively adopted our decision in *Smith* when that element of Art. 979, V.A.P.C. (1925) was incorporated into § 32.21(a)(1)(A)(i).

Accordingly, our decision in *Minix* was governed by *Smith,* not by *Reynolds.* The fact that *Reynolds* has been overruled is unimportant. Additionally, the majority errs by depending on Judge Clinton's dissent in *Minix* because his reasoning has been repeatedly rejected not only by this Court, but also by the Legislature, who, for the thirteen years since *Minix,* has declined to change the statute. "A mere reiteration of the same contention eight years later is not enough to justify one who was not a member of the Court then to say now that [this case] was wrongly decided. Absent new evidence of legislative purpose compelling a different conclusion, the doctrine of *stare decisis* obliges a successor Judge to adhere to findings and holdings of his predecessors." *Banks v. State,* 656 S.W.2d 446, 449 (Tex.Cr.App.1983) (Clinton, J., concurring).

**D.**

While the majority may be tempted to tamper with settled law to achieve a particular result, the majority should exercise its collective judicial restraint and reject the temptation. Appellant is entitled to the same treatment as all defendants similarly situated, i.e. all defendants with *Minix* in-

dictments returned before December 1, 1985.

The instant case presents a classic example of a defendant who should be able to rely upon the notion, predicated upon *stare decisis,* that different defendants in a given situation will receive similar treatment by our appellate courts. Appellant, who is *pro se,* has reasonably relied upon the law which existed up to this moment in time. It seems particularly harsh to make such a drastic change in the law where a *pro se* defendant has reasonably relied upon the settled law to make his case.

**III.**

In conclusion, I find no basis, old or new, supporting the majority's decision to overrule *Minix.* I would like to think that this Court does not consider itself even less constrained by the doctrine of *stare decisis* than the Rehnquist Court, a court which has demonstrated its willingness to "justify abandoning precedents solely because of political change rather than because of an evolution in legal principles." 105 Harv. L.Rev. at 184. For these reasons, I respectfully dissent.

**APPENDIX**

**EX PARTE CHARLES PORTER**

**NO. 71,177**

Habeas Corpus Application

from DALLAS County

**OPINION**

This is an application for writ of habeas corpus filed pursuant to Tex.Code Crim. Proc.Ann. art. 11.07.

Applicant was convicted in the 282nd Judicial District Court of Dallas County, Texas of aggravated robbery in Cause Number F82–76405–JS. Punishment, enhanced by two prior convictions, was assessed by the jury at life imprisonment.

The indictment in one of the prior convictions used for enhancement purposes (Cause Number F79–4310–JP) failed to allege an essential element of the offense of forgery, namely that the forged instrument

"purported to be the act of another who did not authorize the act." Accordingly, that prior conviction was void because it was based on a fundamentally defective indictment. *Minix v. State*, 579 S.W.2d 466, 467 (Tex.Cr.App.1979).

A void conviction may not be used to enhance punishment. *Burney v. State*, 614 S.W.2d 834 (Tex.Cr.App.1981); *White v. State*, 587 S.W.2d 114, 115 (Tex.Cr.App. 1979); *Ex Parte Rivers*, 559 S.W.2d 659, 660 (Tex.Cr.App.1977). Because one of Applicant's prior convictions was void, applicant's punishment in this cause was improperly enhanced under § 12.42(d) Tex.Penal Code Ann.

Accordingly, Applicant shall be remanded to the custody of the Sheriff of Dallas County for a new punishment hearing according to art. 44.29(b) Tex.Code Crim. Proc.Ann. *Ex Parte Sewell*, 742 S.W.2d 393, 397 (Tex.Cr.App.1987) (op. on reh'g). A copy of this opinion is to be forwarded by the Clerk of this Court to the Texas Department of Criminal Justice, Institutional Division.

PER CURIAM

McCormick, P.J., dissents. Clinton, J., adheres to his dissenting opinion in *Minix v. State*, 579 S.W.2d 466, 468 ff (Tex.Cr.App. 1979). Overstreet, J., not participating.

(Delivered February 27, 1991)

En Banc

Do Not Publish