NUMBER 13-08-00732-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 

 

JOSE LUIS LOPEZ, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 


On appeal from the 197th District Court

of Cameron County, Texas.

 


 MEMORANDUM OPINION

 

Before Chief Justice Valdez and Justices Benavides and Vela


 Memorandum Opinion by Chief Justice Valdez
 Appellant, Jose Luis Lopez, was convicted by a Cameron County jury of one count
of burglary of a habitation, a second-degree felony, and one count of forgery, a state jail
felony. See Tex. Penal Code Ann. §§ 30.02(a)(3), (c)(2) (Vernon 2003), 32.21(b), (d)
(Vernon Supp. 2009). The jury assessed punishment at ten years' confinement in the
Institutional Division of the Texas Department of Criminal Justice and a $500 fine for the
burglary count and two years' confinement for the forgery count. The trial court ordered
that the sentences run concurrently. By two issues, Lopez argues that the evidence
supporting his convictions is legally and factually insufficient. We affirm.

I. Factual and Procedural Background

 Among the evidence adduced at trial was testimony that Luis and Lucila Vega were
burglarized between November 2007 and February 2008. Luis and Lucila both testified
that the burglar stole several items from them, including a lawnmower, an edger, a
collection of quarters, some jewelry, a vacuum cleaner, a twelve-foot folding ladder, and
a checkbook. The Vegas also testified that the assailant entered through a boarded-up
window on the side of the house. Luis recalled that the window was locked and that the
assailant had broken the window when entering the house; however, neither Lucila nor
Brownsville Police Department Detective Robert Martinez recalled that the window was
broken. Instead, they testified that the board on the window had been moved or damaged 
by the assailant to gain access to the house.

 Later, the Vegas were notified by their bank that their checking account had been
overdrawn. Both Luis and Lucila testified that they kept a close eye on their bank
accounts, and that they had never overdrawn their accounts. After checking with their
bank, the Vegas discovered that Lopez had cashed a check, supposedly written by Lucila,
at a Brownsville H.E.B. grocery store. The check was for $50.00, made out to Lopez, and
had Lucila's forged signature. Both Luis and Lucila testified that the signature on the check
did not resemble Lucila's typical signature and that neither of them had paid Lopez by
check or authorized him to sign Lucila's name. (1) Rene Martinez, Lopez's second cousin
and the manager in charge at the local H.E.B. grocery store, recalled Lopez asking him
three separate times to cash the check, but Martinez refused to do so because it was
against store policy to cash two-party checks. The record reflected, however, that the
check was later cashed by another H.E.B. employee at Martinez's store. After discovering
that Lopez had cashed the forged check, the Vegas informed Brownsville police of the
forged check and that several items were missing from their home.

 Brownsville Police Department Officer Frank Billiot responded to the Vegas'
complaints on or about February 11, 2008. Officer Billiot testified that the Vegas first
informed him that a vacuum cleaner was missing from the house and that they believed
it might have been stolen by installers who had installed satellite television in three areas
of the house. The Vegas later recalled that a few other items may have been misplaced
or stolen, so Officer Billiot instructed the Vegas to compile an inventory of the missing
items and to provide the inventory to police. Officer Billiot also inspected the Vegas' house
and its surroundings and determined that a burglary had occurred and that the boarded
window was the point of entry. 

 After the Vegas provided Officer Billiot with the inventory of missing items, including
the missing checkbook, Brownsville Police Department Officer Juan Jose Trevino
investigated the forged check. Officer Trevino interviewed Martinez, the H.E.B. manager,
and obtained security camera footage of Lopez cashing the check. Officer Trevino then
compared the image in the security camera footage with mug shots on file with the police
department and determined that Lopez had, in fact, cashed the forged check. Based on
this information, Officer Trevino also believed that Lopez was involved in the burglary of
the Vegas' house. Officer Trevino and Robert Martinez, a detective with the Brownsville
Police Department, inputted Lopez's information into Leads Online, an online computer
database that tracks all items bought and sold at pawnshops, and ran a search for items
recently pawned. The search revealed that Lopez had recently pawned a Craftsman
lawnmower and a Black and Decker Hedgehog electric edger on February 5, 2008, at a
local EZ Pawn store. A picture of the two items pawned was admitted into evidence, and
the Vegas identified the items as theirs.

 Officer Trevino and Detective Martinez went to the EZ Pawn store where the
lawnmower and edger had been pawned and encountered Lopez. Officer Trevino knew
it was Lopez based on the mug shot and security camera footage from the H.E.B. grocery
store. Officer Trevino and Detective Martinez attempted to apprehend Lopez, but he
"balled up both fists," struggled with the officers, and eventually fled from the scene. 
Officer Trevino and Detective Martinez proceeded to check the area for Lopez, but he was
nowhere to be found. Later, Officer Trevino and Detective Martinez contacted Lopez's
mother, who revealed that Lopez was likely hiding at his grandmother's house, which is
situated almost directly behind the Vegas' house. Lopez was subsequently arrested in his
uncle's trailer, which was located on his grandmother's property. Lopez had been hiding
under a bed when police arrived. A checkbook belonging to the Vegas was found in
Lopez's possession in a duffle bag.

 After a jury trial, Lopez was convicted of burglary of a habitation and forgery. See
Tex. Penal Code Ann. §§ 30.02(a)(3), 32.21(b). The jury sentenced Lopez to ten years'
confinement and a $500 fine for the burglary charge and two years' confinement for the
forgery charge, which were ordered to run concurrently. On December 12, 2008, Lopez
filed a motion for new trial, asserting, among other things, that the evidence supporting his
burglary conviction was insufficient and that while "Defendant was found guilty on the
charge of executing a forgery, the only evidence introduced during the trial was that
defendant passed a forgery." The trial court denied Lopez's motion for new trial, and this
appeal ensued. 

II. Standard of Review

 In conducting a legal sufficiency review, we view the relevant evidence in the light
most favorable to the verdict to determine whether a rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt. Hooper v. State, 214
S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson v. Virginia, 443 U.S. 307, 318-19
(1979)); Escamilla v. State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004). The trier of fact
is the sole judge of the facts, the credibility of the witnesses, and the weight given to
testimony. See Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Beckham v. State,
29 S.W.3d 148, 151 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd). We do not
reevaluate the weight and credibility of the evidence, nor do we substitute our own
judgment for the trier of fact. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000)
(en banc); Beckham, 29 S.W.3d at 151. Instead, we consider whether the jury reached a
rational decision. Beckham, 29 S.W.3d at 151.

 In a factual sufficiency review, we review the evidence in a neutral light to determine
whether the evidence is so weak that the jury's verdict seems clearly wrong and manifestly
unjust or is against the great weight and preponderance of the evidence. Watson v. State,
204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). This Court will not reverse the jury's
verdict unless we can say with some objective basis in the record that the great weight and
preponderance of the evidence contradicts the verdict. Id. at 417. Morever, unless the
record clearly reveals that a different result is appropriate, we must defer to the fact finder's
determination concerning what weight to give contradictory testimony. Lancon v. State,
253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

 The State is not required to present direct evidence, such as eyewitness testimony,
to establish guilt. See Guevara v. State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). 
"Circumstantial evidence is as probative as direct evidence in establishing the guilt of the
actor, and circumstantial evidence alone can be sufficient to establish guilt." Hooper, 214
S.W.3d at 13; see Guevara, 152 S.W.3d at 49. The law does not require that each fact
"point directly and independently to the guilt of the appellant, as long as the cumulative
effect of all the incriminating facts is sufficient to support the conviction." Hooper, 214
S.W.3d at 13; see Guevara, 152 S.W.3d at 49.

 Both legal and factual sufficiency are measured by the elements of the offense as
defined by a hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex.
Crim. App. 1997); Adi v. State, 94 S.W.3d 124, 131 (Tex. App.-Corpus Christi 2002, pet.
ref'd). 

III. Burglary of a Habitation

 By his first issue, Lopez argues that the evidence supporting his conviction for
burglary of a habitation is legally and factually insufficient. Specifically, Lopez argues that
the evidence supporting his burglary conviction is insufficient because the alleged
burglaries took place over a long period of time, and the State did not prove that he ever
entered the Vegas' house. Lopez further argues that, at best, the State only proved that
he was in possession of stolen goods. We disagree.

A. Applicable Law

 A person commits burglary of a habitation if, without the effective consent of the
owner, he "enters a building or habitation and commits or attempts to commit a felony,
theft, or an assault." Tex. Penal Code Ann. § 30.02(a)(3). Intent may "be inferred from
circumstantial evidence such as acts, words, and the conduct of the appellant." Guevara,
152 S.W.3d at 50. 

 The Texas Court of Criminal Appeals has recently held that juries may "draw
multiple reasonable inferences as long as each inference is supported by evidence
presented at trial"; however, a jury is "not permitted to draw conclusions based on
speculation." Hooper, 214 S.W.3d at 15-16. Morever, this Court has stated the following:

 "It is not required that the circumstances should, to a moral certainty, actually
exclude every hypothesis that the act may have been committed by another
person, but that the hypothesis is a reasonable one consistent with the
circumstances and the facts proved. (Citations omitted[.]) Each fact need
not point directly and independently to the guilt of the accused, as the
cumulative effect of all the incriminating facts may be sufficient to support the
evidence. (Citations omitted[.]) However, proof which amounts only to a
strong suspicion or mere probability is insufficient."


Smith v. State, 754 S.W.2d 414, 415 (Tex. App.-Corpus Christi 1988, no pet.) (quoting
Carlsen v. State, 654 S.W.2d 444, 447 (Tex. Crim. App. 1983)); see Castillo v. State, 739
S.W.2d 280, 288 (Tex. Crim. App. 1987). "When a defendant is found in recent,
unexplained possession of items taken in a burglary, that evidence is sufficient to convict
for burglary." Smith, 754 S.W.2d at 416; see Poncio v. State, 185 S.W.3d 904, 905 (Tex.
Crim. App. 2006) ("[A] defendant's unexplained possession of property recently stolen in
a burglary permits an inference that the defendant is the one who committed the
burglary."); see also Vela v. State, 771 S.W.3d 659, 661 (Tex. App.-Corpus Christi 1989,
pet. ref'd) (holding that "[p]ossession of recently stolen property . . . does not create a
presumption of guilt but merely an inference of guilt [of burglary] and the evidence must
meet the applicable circumstantial evidence standard"). Furthermore, in Hardage v. State,
the court of criminal appeals held that the "unexplained possession of . . . stolen articles
seven months after the burglary was sufficiently 'recent' to bring this case within the rule
and support the conviction." 552 S.W.2d 837, 839-40 (Tex. Crim. App. 1977) (stating that
determining whether the interval of time between the theft of property and the possession
by the accused is recent or remote "depends on the facts of the particular case, including
the character of the property stolen, the test of recency being: was the interval so short as
to render it morally or reasonably certain that there could have been no intermediate
change of possession").

B. Discussion

 In the instant case, the record does not indicate that Lopez ever gave an
explanation for his possession of the items stolen from the Vegas's house. Through the
questioning of the Vegas, Lopez tried to elicit testimony that the Vegas had possibly hired
him to mow their lawn, which might have supported a reasonable explanation for the
cashing of the check and his usage of the lawnmower and edger. However, this Court has
stated that "[a]n explanation made at the time of trial is not controlling." Smith, 754 S.W.2d
at 416. Furthermore, the Vegas denied ever hiring Lopez to do any work for them. They
also noted that they had seen Lopez wandering through the neighborhood on occasion and
that they did not know him personally. 

 The Vegas also testified that several items had been stolen from their house from
November 2007 to February 2008, a span of approximately four months, and that Lopez
cashed a forged check for $50.00. The Vegas recognized pictures of a Craftsman
lawnmower and Black and Decker edger that were admitted into evidence and noted that
the lawnmower and edger were theirs. Several witnesses testified that a search of Leads
Online indicated that Lopez had pawned the lawnmower and edger at the local EZ Pawn
store. A receipt identifying the items and Lopez by name was admitted into evidence. 
Officer Billiot testified that he searched the Vegas's house and determined that a boarded
window on the side of the house that was broken was the point of entry for the burglar. 
Both Luis and Lucila corroborated Officer Billiot's testimony by stating that they observed
the boarded window to be damaged when they started noticing that items from their house
were missing. Luis seemed to offer contradictory testimony by stating that he remembered
the window being locked and that the window had been shattered at the time in question. 
However, the resolution of this apparent contradiction in the testimony was within the
province of the jury, and we must defer to the jury's resolution of the conflict. See Clayton
v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record supports
conflicting inferences, we presume that the fact finder resolved the conflicts in favor of the
prosecution and therefore defer to that determination.") (citing Jackson, 443 U.S. at 326).

 In addition, Officer Trevino testified that he encountered Lopez at the EZ Pawn
store, and when he attempted to arrest him, Lopez took a fighting stance and eventually
fled the scene. Officer Trevino also testified that: (1) Lopez was hiding under a bed when
police finally caught up with him; (2) Lopez was arrested in his uncle's trailer which is
situated on his grandmother's property; (3) Lopez's grandmother's property is situated
almost directly behind the Vegas's house; and (4) when Lopez was arrested, he had the
Vegas's checkbook in his possession. Because evidence was presented regarding
Lopez's flight to escape apprehension, and because Lopez was found hiding underneath
a bed when the police arrived at his uncle's trailer, the jury could have inferred Lopez's
consciousness of guilt from his efforts to avoid apprehension shortly after the offense. See
Bigby v. State, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994), overruled in part on other
grounds by Tennard v. Dretke, 542 U.S. 274 (2004) (holding that evidence of flight is
admissible as a circumstance from which a jury may draw an inference of guilt); Hernandez
v. State, 939 S.W.2d 173, 178 (Tex. Crim. App. 1997) (en banc) (same); see also Burnett
v. State, No. 13-03-600-CR, 2005 Tex. App. LEXIS 5647, at **9-10 (Tex. App.-Corpus
Christi July 21, 2005, no pet.) (mem. op., not designated for publication). 

 Based on the foregoing, we conclude that the jury was rational in inferring that
Lopez had burglarized the Vegas's house given that: (1) several stolen items, identified
by the Vegas, were either cashed or pawned by Lopez; (2) Lopez fled or hid from
authorities when confronted; and (3) Lopez was in possession of the Vegas's checkbook
at the time of arrest. See Hooper, 214 S.W.3d at 15-16; Hernandez, 939 S.W.2d at 178;
Bigby, 892 S.W.2d at 883; Beckham, 29 S.W.3d at 151; see also Burnett, 2005 Tex. App.
LEXIS 5647, at **9-10. We further conclude that the cumulative effect of all the
incriminating facts is legally sufficient to support Lopez's conviction for burglary of a
habitation. See Hooper, 214 S.W.3d at 13; see also Guevara, 152 S.W.3d at 49. 
Additionally, in viewing the evidence in a neutral light, we cannot say that the evidence is
so weak that the jury's verdict seems clearly wrong and manifestly unjust or is against the
great weight and preponderance of the evidence. See Watson, 204 S.W.3d at 414-15. 
Accordingly, we find that the evidence supporting Lopez's burglary conviction is legally and
factually sufficient; we overrule Lopez's first issue. 

IV. Forgery

 By his second issue, Lopez asserts that the evidence supporting his conviction for
forgery is legally and factually insufficient because the evidence demonstrates that he did
not "execute" a check but merely "passed" a check from the Vegas' checkbook. Lopez
argues that the punishment would not change if we were to conclude that he merely
"passed" a check from the Vegas' checkbook, but that the judgment must be modified to
reflect the offense supported by the record. The State contends that this issue was not
preserved for appeal because Lopez failed to timely object or file a motion to quash the
indictment. The State also argues that the indictment tracked the language contained in
the forgery statute; thus, the evidence supporting Lopez's forgery conviction is legally and
factually sufficient.

A. Applicable Law

 A person commits forgery if he "forges a writing with intent to defraud or harm
another." Tex. Penal Code Ann. § 32.21(b); see Ex parte Porter, 827 S.W.2d 324, 332
(Tex. Crim. App. 1992). Section 32.21 of the penal code further provides that "forge"
means "to alter, make, complete, execute, or authenticate so that it purports . . . to be the
act of another who did not authorize that act." Tex. Penal Code Ann. § 32.21(a)(1)(A)(i). 
Proof of intent to defraud is derivative of other elements; thus, in a forgery case, the
culpable mental state of "intent to defraud or harm" can be inferred if the State proves that
the defendant knew that the writing in question was forged. See Huntley v. State, 4
S.W.3d 813, 814 (Tex. App.-Houston [1st Dist.] 1999, pet. ref'd) (op. on reh'g) (en banc);
see also Flowers v. State, No. 13-05-004-CR, 2008 Tex. App. LEXIS 277, at *5 (Tex.
App.-Corpus Christi Jan. 10, 2008, no pet.) (mem. op. on remand, not designated for
publication). 

B. Discussion

 Generally, when a term is statutorily defined, it need not be further alleged in the
indictment. See Geter v. State, 779 S.W.2d 403, 405 (Tex. Crim. App. 1989); see also
Sierra v. State, No. 13-04-623-CR, 2008 Tex. App. LEXIS 4803, at **22-23 (Tex.
App.-Corpus Christi June 26, 2008, no pet.) (mem. op., not designated for publication);
Adesiyan v. State, No. 01-04-00494-CR, 2005 Tex. App. LEXIS 6382, at *6 (Tex.
App.-Houston [1st Dist.] Aug. 11, 2005, pet. ref'd) (mem. op., not designated for
publication). However, if the statutory term provides for more than one manner or means
to commit that act or omission, then, upon a timely request, the State must allege the
particular manner or means it seeks to establish. See Geter, 779 S.W.2d at 405-06; see
also Sierra, 2008 Tex. App. LEXIS 4803, at **22-23; Adesiyan, 2005 Tex. App. LEXIS
6382, at *7. As noted earlier, the term "forge" within section 32.21 of the penal code
means "to alter, make, complete, execute, or authenticate so that it purports . . . to be the
act of another who did not authorize that act." See Tex. Penal Code Ann. §
32.21(a)(1)(A)(i). Therefore, because the term "forge" is defined within the penal code, the
State was not required to allege the particular manner or means to commit the offense
unless it was timely requested by Lopez. See Geter, 779 S.W.2d at 405-06. 

 The record does not reflect that Lopez made a timely request for the State to allege
the particular manner and means it sought to establish. In fact, Lopez did not file a motion
to quash the indictment or make a timely objection alleging that the true manner or means
of committing the forgery was passing the Vegas's check rather than executing the check. 
Therefore, because Lopez failed to timely request that the State allege the particular
manner or means that it sought to establish, and because the State was only required to
allege in the indictment that Lopez "forge[d] a writing with intent to defraud or harm
another," Tex. Penal Code Ann. § 32.21(b), we conclude that the language in the
indictment stating that Lopez "executed" the check was surplusage and did not prejudice
Lopez's substantial rights. See Tex. Code Crim. Proc. Ann. art. 21.19 (Vernon 2003) ("An
indictment shall not be held insufficient, nor shall the trial, judgment or other proceedings
thereon be affected, by reason of any defect of form which does not prejudice the
substantial rights of the defendant."); see also Ex parte Porter, 827 S.W.2d at 332 (holding
that the State need only allege in an indictment that defendant forged a writing with intent
to defraud or harm another and that additional language, including language from section
32.21(a) of the penal code, in the forgery allegation contained in the indictment is
surplusage). Thus, error, if any, in the indictment was waived. See Tex. R. App. P. 33.1;
see also Geter, 779 S.W.2d at 405-06. 

 In any event, assuming, arguendo, that Lopez had preserved this issue for appeal,
we note that the record reflects that Lopez stole the Vegas's checkbook, made out a check
to himself in the amount of $50.00, forged Lucila's signature, and passed it to an H.E.B.
grocery store employee to be cashed. The Vegas testified at trial that they did not pay
Lopez by check or authorize him to cash a check on the Vegas's account. Therefore, we
conclude that the jury was rational in concluding that, by signing Lucila's name to the stolen
check and passing it to the H.E.B. grocery store, Lopez executed the check with intent to
defraud the Vegas. See Tex. Penal Code Ann. § 32.21(a)(1)(A)(I), (b); Black's Law
Dictionary 467 (7th ed. 2000) (noting that "execute" is defined as "[t]o change (as a legal
interest) from one form to another" or "[t]o make (a legal document) valid by signing; to
bring (a legal document) into its final, legally enforceable form"); Beckham, 29 S.W.3d at
151; see also Flowers, 2008 Tex. App. LEXIS 277, at *5 (noting that a defendant executes
a check by signing another's name to it, i.e. forging the document, and then passing it to
another). Thus, viewing the evidence in the light most favorable to the jury's verdict, we
find that the evidence supporting Lopez's forgery conviction is legally sufficient. See
Hooper, 214 S.W.3d at 13; Escamilla, 143 S.W.3d at 817. Furthermore, viewing the
evidence in a neutral light, we cannot say that the evidence supporting Lopez's forgery
conviction is so weak that the jury's verdict seems clearly wrong and manifestly unjust or
is against the great weight and preponderance of the evidence; therefore, the evidence is
factually sufficient. See Watson, 204 S.W.3d at 414-15. Accordingly, we overrule Lopez's
second issue.

V. Conclusion

 Having overruled both of Lopez's issues, we affirm the judgment of the trial court.

 ________________________

 ROGELIO VALDEZ

 Chief Justice 

Do not publish. 

Tex. R. App. P. 47.2(b)

Delivered and filed the 

25th day of March, 2010. 





 
1. Lopez signed the check "Lucy Vega"; both Luis and Lucila testified that Lucila never signed checks
in such a manner.