

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-06-393-CR

NOEL RONALDO VILLARREAL                                    APPELLANT

V.

THE STATE OF TEXAS                                              STATE

------------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

A jury convicted Appellant Noel Ronaldo Villarreal of violating a protective order by committing an act of family violence. The trial court sentenced Appellant, who was charged as a habitual offender, to sixty years' confinement in the Institutional Division of the Texas Department of Criminal Justice.

---

[1] *See* TEX. R. APP. P. 47.4.

In three points, Appellant challenges the legal and factual sufficiency of the evidence and the jury instructions defining dating violence and dating relationship. Because we hold that the evidence is both legally and factually sufficient to support Appellant's conviction and that the trial court did not err by defining the terms for the jury, we affirm the trial court's judgment.

## BACKGROUND FACTS

Appellant began dating the complainant in January 2005. On February 6, 2005, she obtained a protective order against him. On March 2, 2005, as the complainant was driving home from work, Appellant called her on her cell phone and told her to meet him or he'd "wrap [her] car around a telephone pole." Appellant was at that time in his truck, following her SUV. She suggested that they meet at Hot Rods and Hoggs, a bar. The complainant testified that when Appellant ordered her a drink, he told her to "drink it or wear it or have it knocked upside [her] head." She drank continually while she was with Appellant at the bar. Appellant also drank.

At some point, the complainant went to order another round of drinks and then went out the side door. She walked to her vehicle, got in, and started it, but before she could drive away, her head was slammed against the steering wheel. She testified that she did not remember what happened after that.

2

A witness testified that as he got into his car to leave the bar, he saw a woman walk to her vehicle and saw a man walk up to her and begin hitting her. That witness went back to the bar and notified bar staff about the altercation in the parking lot. A bar employee restrained the assailant and called the police, who arrested the assailant, Appellant. The employee who restrained Appellant testified that after the altercation in the parking lot had been broken up, the complainant attempted to back her vehicle out of the parking space, and in the process, she backed into a parked van.

After Appellant's arrest, the complainant wrote a letter to the magistrate who had issued the protective order, asking her to lift the order. The complainant testified that she wrote the letter at Appellant's insistence and that she did so in the hope that he would then leave her alone. For the same reason, she testified, she also executed an affidavit of nonprosecution and told the grand jury that Appellant had not injured her, that she had hit her head getting into her car because she was drunk, that Appellant was only trying to help her that night, and that she was so drunk that she had not even realized that she had backed into another car. She testified that Appellant drove her to testify to the grand jury and that he told her what to say in her grand jury testimony.

3

The indictment contains a paragraph alleging that the complainant was a member of Appellant's family or household, but the State waived that paragraph and that allegation was never submitted to the jury. Consequently, except for the conclusory statement that Appellant committed an act of family violence, the indictment contains no allegation that the complainant was a member of Appellant's family or household or that a dating relationship had existed between the two. And although the jury was provided a definition of dating relationship and dating violence, the application paragraph did not require a finding of either a dating relationship or dating violence. Nor is there any allegation in the indictment that Appellant had been previously convicted of family violence, and the jury was not asked to find any prior convictions for family violence.

## LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE

In challenging the legal and factual sufficiency of the evidence in his first two points, Appellant offers three arguments: (1) the evidence fails to establish that Appellant violated the terms of the protective order; (2) the State's contradictory evidence does not prove that an assault occurred; and (3) the evidence raises serious questions about the complainant's character for truthfulness.

**Protective Order**

Appellant argues that the protective order prohibited him from committing family violence as it regards members of the same household and members of a family but not family violence in terms of dating violence. Appellant is correct that the definition contained in State's Exhibit Four, the magistrate's order for emergency protection family violence, does not include the definition of family violence in terms of dating violence. The portion of the "order" to which Appellant refers, however, is the portion appended after the order itself and after the requisite warning.[2] It is part of neither the order nor the warning, and Appellant has directed us to no authority providing otherwise.[3]

Our review of the emergency protective order shows that it specifically names the complainant and the offense now before this court. It also names her parents and her children. The order prohibits Appellant's committing family violence and prohibits his communicating in a threatening and harassing manner directly with the complainant or a member of her family or household and from communicating a threat through any person to the complainant or members of

---

[2] *See* TEX. CODE CRIM. PROC. ANN. art. 17.292(g) (Vernon Supp. 2007).

[3] *See* TEX. R. APP. P. 38.1(h); *Tong v. State,* 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), *cert. denied,* 532 U.S. 1053 (2001).

5

her family or household. It also prohibits his going within three hundred feet of the residence, business, or place of employment of the complainant or member of her family or household protected under the order. It does not specify the type of family violence prohibited.

Appellant does not claim on appeal that the indictment is defective for failing to specify which kind of family violence he committed; that is, whether he committed family violence against a member of his family or household or whether he committed family violence against someone with whom he was or had been in a dating relationship, nor does he complain of the denial of any motion to quash the indictment.[4]

The State's burden on appeal was to prove that Appellant, intentionally or knowingly in violation of the protective order, committed an act of family violence. The statute defines family violence as

> (1) an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault, or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself;
>
> (2) abuse, as that term is defined by Sections 261.001(1)(C), (E), and (G), by a member of a family or household toward a child of the family or household; or

---

[4] See *Teal v. State*, 230 S.W.3d 172, 182 (Tex. Crim. App. 2007).

6

(3) dating violence, as that term is defined by Section 71.0021.[5]

Section 71.0021(a) defines dating violence as

> an act by an individual that is against another individual with whom that person has or has had a dating relationship and that is intended to result in physical harm, bodily injury, assault, or sexual assault, or that is a threat that reasonably places the individual in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself.[6]

### Contradictory Evidence of Assault and Credibility of Complainant

Appellant argues that the State's contradictory evidence does not prove that an assault occurred and further contends that the evidence raises questions about the complainant's credibility. He also argues that the complainant's head could have slammed into the steering wheel when she hit the vehicle behind her, especially since she had no recollection of seeing Appellant in the parking lot.

It is not our place to resolve the conflicts in the evidence or to judge the complainant's credibility. In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have

---

[5] TEX. FAM. CODE ANN. § 71.004 (Vernon 2002).

[6] *Id.* § 71.0021.

7

found the essential elements of the crime beyond a reasonable doubt.[7] This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[8] The trier of fact is the sole judge of the weight and credibility of the evidence.[9] Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder.[10] Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict."[11] We must presume that the fact-finder resolved any conflicting inferences in favor of the prosecution and defer to that

---

[7] *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

[8] *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778.

[9] *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).

[10] *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000).

[11] *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007).

resolution.[12]

Similarly, when reviewing the evidence for factual sufficiency, unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered."[13] Thus, we must give due deference to the fact-finder's determinations, "particularly those determinations concerning the weight and credibility of the evidence."[14]

The indictment alleges that Appellant violated the protective order by committing an act of family violence, namely "intentionally causing bodily injury to [the complainant], by striking her with his hand or pushing her with his hand, and said act of family violence was intended to result in physical harm, bodily injury, or assault . . . ." Although the State argues that the complainant ran to her car as fast as possible but, before she could drive off, Appellant opened her car door and slammed her head against the steering wheel, we cannot read her

---

[12] *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

[13] *Johnson v. State*, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000).

[14] *Id*. at 9.

testimony in such a clear manner.

The complainant stated that she left the bar through a side door. As she was leaving the bar, she was alone and did not notice anyone else in the parking lot, although she was not really paying attention. Her intent was to get into her car and to run. She made it to her car and managed to open the door. She testified, "I got it into reverse." The prosecutor sought clarity, "So you actually were able to get to the car?" The complainant testified that she was just beginning to pull out with the car in reverse gear, when "the car door opened up and [her] head was slammed against the steering wheel." The complainant testified that she was probably drunk when she got into her car to leave. She did not remember backing into a van that was parked behind her. The complainant testified, when asked if she knew who had opened the door just before she struck her head, "Yes, it was [Appellant]." The complainant never specifically testified that Appellant slammed her head into the steering wheel; instead she testified that she had no personal recollection of what had happened.

The complainant admitted that she had signed a letter asking that the restraining order be lifted but testified that she did so only because Appellant insisted that she do so and because she wanted him to go away and leave her alone.

The complainant also admitted that she had signed an affidavit of nonprosecution. At trial, however, she testified that she had signed it only "if it would make everything go away." She prepared a written statement that she sent to Appellant's now former defense counsel to prepare the affidavit of nonprosecution. She stated in that document,

> I . . . do hereby declare that on the night of the incident that [Appellant] was arrested in front of Hot Rods and Hoggs, that I was very intoxicated, that [Appellant] did not injure me in any way. My injuries occurred when I was trying to enter my vehicle and hit my head on the side of the car when I went to step in the vehicle. [Appellant] was not even present with me at the time.
>
> Furthermore, I was so intoxicated . . . that night that I also hit a parked car which I was not even aware that I hit until the police told me that I had hit another vehicle. There was not any reason for [Appellant] to be arrested during this incident. He was only trying to help me at the time because I had been injured. I am not fully sure why he even went to jail that night. We had agreed to meet that night to discuss our situation at a neutral place just as the judge told us to do. There was no malicious or physical conduct to justify his arrest.

The lawyer prepared the affidavit of nonprosecution and the complainant subsequently signed it. The affidavit provided,

> My name is [the complainant]. I am of sound mind and capable of making this affidavit. I am personally acquainted with the facts herein stated, which are true.
>
> On the date this incident occurred, I was at Hot Rods and Hog[g]s with [Appellant]. I had invited him to meet me there. During the evening I became very intoxicated and walked out of the bar. [Appellant] did not even know that I had left.

11

I walked out of the bar and was trying to enter my vehicle. While trying to step into my vehicle, I hit my head on the side/roof and fell to the ground.

[Appellant] came out shortly thereafter. While he was trying to assist me, other individuals grabbed him and he was later arrested.

I do not even know why he was arrested because at no time did he act maliciously or physically harm me.

Despite the complainant's earlier written statement and affidavit and her failure to remember how the head injury happened, another witness, David Paden, saw the assault. He testified that he saw a man attack a female who was trying to get into her car. The male came up behind the female and pushed her so that the woman hit her head on the doorjamb. Paden went for help, and when he returned to the scene of the fight, he saw the female in the driver's seat turned sideways and the male was leaning over her trying to hit her with his fists and hands as she attempted to defend herself. Paden testified that the male who was subdued by the bar employees and arrested by the police was the same person he saw attack the female.

12

Applying the appropriate standards of review,[15] we hold that the evidence is both legally and factually sufficient to support the trial court's judgment and overrule Appellant's first two points.

## JURY CHARGE

In his third point, Appellant contends that the trial court erred by including instructions in the jury charge that addressed dating violence and dating relationship. The indictment charged that Appellant committed an act of family violence against [the complainant] in violation of a protective order. The jury was charged that they could convict upon a finding of dating violence. As discussed above, section 71.004 of the family code defines family violence, and subsection (3) of that section specifically includes dating violence as part of the definition of family violence. While the indictment might be subject to a motion to quash requiring the State to prove the nature of family violence, given that the statute provides three separate definitions of family violence,[16] Appellant does not complain that the trial court denied a motion to quash. It

---

[15] *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778 (both providing legal sufficiency standard of review); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005); *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003); *Johnson*, 23 S.W.3d at 11 (all providing factual sufficiency standard of review).

[16] *See* TEX. FAM. CODE ANN. § 71.004.

13

is well settled that a jury charge may not authorize a conviction upon a theory not alleged in the indictment,[17] but in this case there was a general allegation of family violence and no request for greater specificity.[18]  The trial court did not err by charging the jury on dating violence and the dating relationship.  We overrule Appellant's third point.

## CONCLUSION

Having overruled Appellant's three points, we affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL B:  DAUPHINOT, GARDNER, and MCCOY, JJ.

---

[17] *Rodriguez v. State*, 18 S.W.3d 228, 232 (Tex. Crim. App. 2000); *Nunez v. State*, 215 S.W.3d 537, 542 (Tex. App.—Waco 2007, pet. ref'd).

[18] *See Ex parte Porter*, 827 S.W.2d 324, 327 (Tex. Crim. App. 1992) ("[A]bsent a motion to quash for lack of notice, the State is not required to allege in the indictment that the forged instrument 'purported to be the act of another who did not authorize the act' since such allegation does not constitute an element of the offense of forgery."); *Hall v. State*, 640 S.W.2d 307, 309 (Tex. Crim. App. 1982) (holding that when appellant fails to point out specifically how a more precise allegation was required for adequate notice, alleging attempted murder without specifying which type of murder under the statute is sufficient).

14

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED:  April 17, 2008

15