COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-393-CR

 

 

NOEL RONALDO VILLARREAL                                                APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM THE 297TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

A jury convicted Appellant Noel Ronaldo
Villarreal of violating a protective order by committing an act of family
violence.  The trial court sentenced
Appellant, who was charged as a habitual offender, to sixty years= confinement
in the Institutional Division of the Texas Department of Criminal Justice.      








In three
points, Appellant challenges the legal and factual sufficiency of the evidence
and the jury instructions defining dating violence and dating
relationship.  Because we hold that the
evidence is both legally and factually sufficient to support Appellant=s
conviction and that the trial court did not err by defining the terms for the
jury, we affirm the trial court=s
judgment.

BACKGROUND
FACTS

Appellant
began dating the complainant in January 2005. 
On February 6, 2005, she obtained a protective order against him.  On March 2, 2005, as the complainant was
driving home from work, Appellant called her on her cell phone and told her to
meet him or he=d Awrap
[her] car around a telephone pole.@  Appellant was at that time in his truck,
following her SUV.  She suggested that
they meet at Hot Rods and Hoggs, a bar. 
The complainant testified that when Appellant ordered her a drink, he
told her to Adrink it or wear it or have it
knocked upside [her] head.@  She drank continually while she was with
Appellant at the bar.  Appellant also
drank. 

At some
point, the complainant went to order another round of drinks and then went out
the side door.  She walked to her vehicle,
got in, and started it, but before she could drive away, her head was slammed
against the steering wheel.  She
testified that she did not remember what happened after that.  








A witness testified that as he got into his car
to leave the bar, he saw a woman walk to her vehicle and saw a man walk up to
her and begin hitting her.  That witness
went back to the bar and notified bar staff about the altercation in the
parking lot.  A bar employee restrained
the assailant and called the police, who arrested the assailant,
Appellant.  The employee who restrained
Appellant testified that after the altercation in the parking lot had been
broken up, the complainant attempted to back her vehicle out of the parking
space, and in the process, she backed into a parked van.

After
Appellant=s arrest, the complainant wrote
a letter to the magistrate who had issued the protective order, asking her to
lift the order.  The complainant
testified that she wrote the letter at Appellant=s
insistence and that she did so in the hope that he would then leave her
alone.  For the same reason, she
testified, she also executed an affidavit of nonprosecution and told the grand
jury that Appellant had not injured her, that she had hit her head getting into
her car because she was drunk, that Appellant was only trying to help her that
night, and that she was so drunk that she had not even realized that she had
backed into another car.  She testified
that Appellant drove her to testify to the grand jury and that he told her what
to say in her grand jury testimony.








The indictment contains a paragraph alleging that
the complainant was a member of Appellant=s family
or household, but the State waived that paragraph and that allegation was never
submitted to the jury.  Consequently,
except for the conclusory statement that Appellant committed an act of family
violence, the indictment contains no allegation that the complainant was a
member of Appellant=s family or household or that a
dating relationship had existed between the two.  And although the jury was provided a
definition of dating relationship and dating violence, the application
paragraph did not require a finding of either a dating relationship or dating
violence.  Nor is there any allegation in
the indictment that Appellant had been previously convicted of family violence,
and the jury was not asked to find any prior convictions for family violence. 

LEGAL
AND FACTUAL SUFFICIENCY OF THE EVIDENCE

In
challenging the legal and factual sufficiency of the evidence in his first two
points, Appellant offers three arguments: (1) the evidence fails to establish
that Appellant violated the terms of the protective order; (2) the State=s
contradictory evidence does not prove that an assault occurred; and (3) the
evidence raises serious questions about the complainant=s
character for truthfulness.

 








Protective
Order

Appellant
argues that the protective order prohibited him from committing family violence
as it regards members of the same household and members of a family but not
family violence in terms of dating violence. 
Appellant is correct that the definition contained in State=s
Exhibit Four, the magistrate=s order
for emergency protection family violence, does not include the definition of
family violence in terms of dating violence. 
The portion of the Aorder@ to
which Appellant refers, however, is the portion appended after the order itself
and after the requisite warning.[2]  It is part of neither the order nor the
warning, and Appellant has directed us to no authority providing otherwise.[3]









Our
review of the emergency protective order shows that it specifically names the
complainant and the offense now before this court.  It also names her parents and her
children.  The order prohibits Appellant=s
committing family violence and prohibits his communicating in a threatening and
harassing manner directly with the complainant or a member of her family or
household and from communicating a threat through any person to the complainant
or members of her family or household. 
It also prohibits his going within three hundred feet of the residence,
business, or place of employment of the complainant or member of her family or
household protected under the order.  It
does not specify the type of family violence prohibited.  

Appellant
does not claim on appeal that the indictment is defective for failing to
specify which kind of family violence he committed; that is, whether he
committed family violence against a member of his family or household or
whether he committed family violence against someone with whom he was or had
been in a dating relationship, nor does he complain of the denial of any motion
to quash the indictment.[4]


The
State=s burden
on appeal was to prove that Appellant, intentionally or knowingly in violation
of the protective order, committed an act of family violence.  The statute defines family violence as 

(1) an act by a member of
a family or household against another member of the family or household that is
intended to result in physical harm, bodily injury, assault, or sexual assault,
or that is a threat that reasonably places the member in fear of imminent
physical harm, bodily injury, assault, or sexual assault, but does not include
defensive measures to protect oneself; 

 

(2) abuse, as that term
is defined by Sections 261.001(1)(C), (E), and (G), by a member of a family or
household toward a child of the family or household; or








(3) dating violence, as
that term is defined by Section 71.0021.[5]


 

Section 71.0021(a) defines dating violence as 

 

an act
by an individual that is against another individual with whom that person has
or has had a dating relationship and that is intended to result in physical
harm, bodily injury, assault, or sexual assault, or that is a threat that
reasonably places the individual in fear of imminent physical harm, bodily
injury, assault, or sexual assault, but does not include defensive measures to
protect oneself.[6]

Contradictory
Evidence of Assault and Credibility of Complainant 

Appellant
argues that the State=s contradictory evidence does
not prove that an assault occurred and further contends that the evidence
raises questions about the complainant=s
credibility.  He also argues that the
complainant=s head could have slammed into
the steering wheel when she hit the vehicle behind her, especially since she
had no recollection of seeing Appellant in the parking lot. 













It is
not our place to resolve the conflicts in the evidence or to judge the
complainant=s credibility.  In reviewing the legal sufficiency of the
evidence to support a conviction, we view all the evidence in the light most
favorable to the prosecution in order to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.[7]  This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.[8]  The trier of fact is the sole judge of the
weight and credibility of the evidence.[9]  Thus, when performing a legal sufficiency
review, we may not re-evaluate the weight and credibility of the evidence and
substitute our judgment for that of the fact-finder.[10]  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@[11]  We must presume that the fact-finder resolved
any conflicting inferences in favor of the prosecution and defer to that
resolution.[12]

Similarly,
when reviewing the evidence for factual sufficiency, unless the record clearly
reveals that a different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@[13]  Thus, we must give due deference to the
fact-finder=s determinations, Aparticularly
those determinations concerning the weight and credibility of the evidence.@[14] 








The
indictment alleges that Appellant violated the protective order by committing
an act of family violence, namely Aintentionally
causing bodily injury to [the complainant], by striking her with his hand or
pushing her with his hand, and said act of family violence was intended to
result in physical harm, bodily injury, or assault . . . .@  Although the State argues that the
complainant ran to her car as fast as possible but, before she could drive off,
Appellant opened her car door and slammed her head against the steering wheel,
we cannot read her testimony in such a clear manner.

The complainant
stated that she left the bar through a side door.  As she was leaving the bar, she was alone and
did not notice anyone else in the parking lot, although she was not really
paying attention.  Her intent was to get
into her car and to run.  She made it to
her car and managed to open the door. 
She testified, AI got it into reverse.@  The prosecutor sought clarity, ASo you
actually were able to get to the car?@  The complainant testified that she was just
beginning to pull out with the car in reverse gear, when Athe car
door opened up and [her] head was slammed against the steering wheel.@  The complainant testified that she was
probably drunk when she got into her car to leave.  She did not remember backing into a van that
was parked behind her. The complainant testified, when asked if she knew who
had opened the door just before she struck her head, AYes, it
was [Appellant].@ 
The complainant never specifically testified that Appellant slammed her
head into the steering wheel; instead she testified that she had no personal
recollection of what had happened.

The
complainant admitted that she had signed a letter asking that the restraining
order be lifted but testified that she did so only because Appellant insisted
that she do so and because she wanted him to go away and leave her alone.








The
complainant also admitted that she had signed an affidavit of
nonprosecution.  At trial, however, she
testified that she had signed it only Aif it
would make everything go away.@  She prepared a written statement that she
sent to Appellant=s now former defense counsel to
prepare the affidavit of nonprosecution. 
She stated in that document,

I . . . do hereby declare
that on the night of the incident that [Appellant] was arrested in front of Hot
Rods and Hoggs, that I was very intoxicated, that [Appellant] did not injure me
in any way.  My injuries occurred when I
was trying to enter my vehicle and hit my head on the side of the car when I
went to step in the vehicle.  [Appellant]
was not even present with me at the time. 


 

Furthermore, I was so
intoxicated . . . that night that I also hit a parked car which I was not even
aware that I hit until the police told me that I had hit another vehicle.  There was not any reason for [Appellant] to
be arrested during this incident.  He was
only trying to help me at the time because I had been injured.  I am not fully sure why he even went to jail
that night.  We had agreed to meet that
night to discuss our situation at a neutral place just as the judge told us to
do.  There was no malicious or physical
conduct to justify his arrest.

 

The
lawyer prepared the affidavit of nonprosecution and the complainant
subsequently signed it.  The affidavit
provided, 

My name is [the
complainant].  I am of sound mind and
capable of making this affidavit.  I am
personally acquainted with the facts herein stated, which are true.  

 

On the date this incident
occurred, I was at Hot Rods and Hog[g]s with [Appellant].  I had invited him to meet me there.  During the evening I became very intoxicated
and walked out of the bar.  [Appellant]
did not even know that I had left.








I walked out of the bar
and was trying to enter my vehicle. 
While trying to step into my vehicle, I hit my head on the side/roof and
fell to the ground.  

 

[Appellant] came out
shortly thereafter.  While he was trying
to assist me, other individuals grabbed him and he was later arrested.  

 

I do not even know why he
was arrested because at no time did he act maliciously or physically harm me.

 

Despite the complainant=s
earlier written statement and affidavit and her failure to remember how the
head injury happened, another witness, David Paden, saw the assault.  He testified that he saw a man attack a
female who was trying to get into her car. 
The male came up behind the female and pushed her so that the woman hit
her head on the doorjamb.  Paden went for
help, and when he returned to the scene of the fight, he saw the female in the
driver=s seat
turned sideways and the male was leaning over her trying to hit her with his
fists and hands as she attempted to defend herself.  Paden testified that the male who was subdued
by the bar employees and arrested by the police was the same person he saw
attack the female. 








Applying
the appropriate standards of review,[15]
we hold that the evidence is both legally and factually sufficient to support
the trial court=s judgment and overrule
Appellant=s first two points.

JURY
CHARGE








In his third point, Appellant contends that the
trial court erred by including instructions in the jury charge that addressed
dating violence and dating relationship. 
The indictment charged that Appellant committed an act of family
violence against [the complainant] in violation of a protective order.  The jury was charged that they could convict
upon a finding of dating violence.  As
discussed above, section 71.004 of the family code defines family violence, and
subsection (3) of that section specifically includes dating violence as part of
the definition of family violence.  While
the indictment might be subject to a motion to quash requiring the State to
prove the nature of family violence, given that the statute provides three
separate definitions of family violence,[16]
Appellant does not complain that the trial court denied a motion to quash.  It is well settled that a jury charge may not
authorize a conviction upon a theory not alleged in the indictment,[17]
but in this case there was a general allegation of family violence and no
request for greater specificity.[18]  The trial court did not err by charging the
jury on dating violence and the dating relationship.  We overrule Appellant=s third
point.

CONCLUSION

Having
overruled Appellant=s three points, we affirm the
trial court=s judgment. 

 

 

LEE ANN DAUPHINOT

JUSTICE

 

PANEL
B:  DAUPHINOT, GARDNER, and MCCOY, JJ.

DO NOT PUBLISH








Tex. R. App. P. 47.2(b)

 

DELIVERED:  April 17, 2008











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Code Crim. Proc. Ann. art. 17.292(g) (Vernon Supp.
2007).





[3]See Tex. R. App. P. 38.1(h); Tong v. State, 25 S.W.3d 707,
710 (Tex. Crim. App. 2000), cert. denied, 532 U.S. 1053 (2001).

 





[4]See Teal v. State, 230 S.W.3d 172, 182
(Tex. Crim. App. 2007).





[5]Tex.
Fam. Code Ann.
' 71.004 (Vernon 2002).





[6]Id. ' 71.0021.





[7]Jackson v. Virginia, 443 U.S. 307, 319, 99
S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772, 778 (Tex.
Crim. App. 2007).





[8]Jackson, 443 U.S. at 319, 99 S.
Ct. at 2789; Clayton, 235 S.W.3d at 778.





[9]See
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v. State, 34 S.W.3d 912,
919 (Tex. Crim. App. 2000).





[10]Dewberry v. State, 4 S.W.3d 735, 740 (Tex.
Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).





[11]Hooper v. State, 214 S.W.3d 9, 16B17 (Tex. Crim. App.
2007).





[12]Jackson, 443 U.S. at 326, 99 S.
Ct. at 2793; Clayton, 235 S.W.3d at 778.





[13]Johnson v. State, 23 S.W.3d 1, 8 (Tex.
Crim. App. 2000).





[14]Id. at 9.





[15]See Jackson, 443 U.S. at 319, 99 S.
Ct. at 2789; Clayton, 235 S.W.3d at 778 (both providing legal
sufficiency standard of review); Watson v. State, 204 S.W.3d 404, 414
(Tex. Crim. App. 2006); Drichas v. State, 175 S.W.3d 795, 799 (Tex.
Crim. App. 2005); Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App.
2003); Johnson, 23 S.W.3d at 11 (all providing factual sufficiency
standard of review).





[16]See Tex.
Fam. Code Ann.
' 71.004.





[17]Rodriguez v. State, 18 S.W.3d 228, 232
(Tex. Crim. App. 2000); Nunez v. State, 215 S.W.3d 537, 542 (Tex. App.CWaco 2007, pet. ref=d).   





[18]See Ex parte Porter, 827 S.W.2d 324, 327
(Tex. Crim. App. 1992) (A[A]bsent a motion to
quash for lack of notice, the State is not required to allege in the indictment
that the forged instrument >purported to be the act of another who did not
authorize the act= since such allegation
does not constitute an element of the offense of forgery.@); Hall v. State,
640 S.W.2d 307, 309 (Tex. Crim. App. 1982) (holding that when appellant fails
to point out specifically how a more precise allegation was required for
adequate notice, alleging attempted murder without specifying which type of
murder under the statute is sufficient).