

**NUMBER 13-08-00732-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **JOSE LUIS LOPEZ,** | **Appellant,** |

**v.**

| | |
|---|---|
| **THE STATE OF TEXAS,** | **Appellee.** |

**On appeal from the 197th District Court
of Cameron County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Vela
Memorandum Opinion by Chief Justice Valdez**

Appellant, Jose Luis Lopez, was convicted by a Cameron County jury of one count of burglary of a habitation, a second-degree felony, and one count of forgery, a state jail felony. *See* Tex. Penal Code Ann. §§ 30.02(a)(3), (c)(2) (Vernon 2003), 32.21(b), (d) (Vernon Supp. 2009). The jury assessed punishment at ten years' confinement in the Institutional Division of the Texas Department of Criminal Justice and a $500 fine for the burglary count and two years' confinement for the forgery count. The trial court ordered

that the sentences run concurrently. By two issues, Lopez argues that the evidence supporting his convictions is legally and factually insufficient. We affirm.

## I. Factual and Procedural Background

Among the evidence adduced at trial was testimony that Luis and Lucila Vega were burglarized between November 2007 and February 2008. Luis and Lucila both testified that the burglar stole several items from them, including a lawnmower, an edger, a collection of quarters, some jewelry, a vacuum cleaner, a twelve-foot folding ladder, and a checkbook. The Vegas also testified that the assailant entered through a boarded-up window on the side of the house. Luis recalled that the window was locked and that the assailant had broken the window when entering the house; however, neither Lucila nor Brownsville Police Department Detective Robert Martinez recalled that the window was broken. Instead, they testified that the board on the window had been moved or damaged by the assailant to gain access to the house.

Later, the Vegas were notified by their bank that their checking account had been overdrawn. Both Luis and Lucila testified that they kept a close eye on their bank accounts, and that they had never overdrawn their accounts. After checking with their bank, the Vegas discovered that Lopez had cashed a check, supposedly written by Lucila, at a Brownsville H.E.B. grocery store. The check was for $50.00, made out to Lopez, and had Lucila's forged signature. Both Luis and Lucila testified that the signature on the check did not resemble Lucila's typical signature and that neither of them had paid Lopez by check or authorized him to sign Lucila's name.[1] Rene Martinez, Lopez's second cousin and the manager in charge at the local H.E.B. grocery store, recalled Lopez asking him three separate times to cash the check, but Martinez refused to do so because it was

---

[1] Lopez signed the check "Lucy Vega"; both Luis and Lucila testified that Lucila never signed checks in such a manner.

2

against store policy to cash two-party checks. The record reflected, however, that the check was later cashed by another H.E.B. employee at Martinez's store. After discovering that Lopez had cashed the forged check, the Vegas informed Brownsville police of the forged check and that several items were missing from their home.

Brownsville Police Department Officer Frank Billiot responded to the Vegas' complaints on or about February 11, 2008. Officer Billiot testified that the Vegas first informed him that a vacuum cleaner was missing from the house and that they believed it might have been stolen by installers who had installed satellite television in three areas of the house. The Vegas later recalled that a few other items may have been misplaced or stolen, so Officer Billiot instructed the Vegas to compile an inventory of the missing items and to provide the inventory to police. Officer Billiot also inspected the Vegas' house and its surroundings and determined that a burglary had occurred and that the boarded window was the point of entry.

After the Vegas provided Officer Billiot with the inventory of missing items, including the missing checkbook, Brownsville Police Department Officer Juan Jose Trevino investigated the forged check. Officer Trevino interviewed Martinez, the H.E.B. manager, and obtained security camera footage of Lopez cashing the check. Officer Trevino then compared the image in the security camera footage with mug shots on file with the police department and determined that Lopez had, in fact, cashed the forged check. Based on this information, Officer Trevino also believed that Lopez was involved in the burglary of the Vegas' house. Officer Trevino and Robert Martinez, a detective with the Brownsville Police Department, inputted Lopez's information into Leads Online, an online computer database that tracks all items bought and sold at pawnshops, and ran a search for items recently pawned. The search revealed that Lopez had recently pawned a Craftsman

lawnmower and a Black and Decker Hedgehog electric edger on February 5, 2008, at a local EZ Pawn store. A picture of the two items pawned was admitted into evidence, and the Vegas identified the items as theirs.

Officer Trevino and Detective Martinez went to the EZ Pawn store where the lawnmower and edger had been pawned and encountered Lopez. Officer Trevino knew it was Lopez based on the mug shot and security camera footage from the H.E.B. grocery store. Officer Trevino and Detective Martinez attempted to apprehend Lopez, but he "balled up both fists," struggled with the officers, and eventually fled from the scene. Officer Trevino and Detective Martinez proceeded to check the area for Lopez, but he was nowhere to be found. Later, Officer Trevino and Detective Martinez contacted Lopez's mother, who revealed that Lopez was likely hiding at his grandmother's house, which is situated almost directly behind the Vegas' house. Lopez was subsequently arrested in his uncle's trailer, which was located on his grandmother's property. Lopez had been hiding under a bed when police arrived. A checkbook belonging to the Vegas was found in Lopez's possession in a duffle bag.

After a jury trial, Lopez was convicted of burglary of a habitation and forgery. *See* TEX. PENAL CODE ANN. §§ 30.02(a)(3), 32.21(b). The jury sentenced Lopez to ten years' confinement and a $500 fine for the burglary charge and two years' confinement for the forgery charge, which were ordered to run concurrently. On December 12, 2008, Lopez filed a motion for new trial, asserting, among other things, that the evidence supporting his burglary conviction was insufficient and that while "Defendant was found guilty on the charge of executing a forgery, the only evidence introduced during the trial was that defendant passed a forgery." The trial court denied Lopez's motion for new trial, and this

4

appeal ensued.

## II. STANDARD OF REVIEW

In conducting a legal sufficiency review, we view the relevant evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)); *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004). The trier of fact is the sole judge of the facts, the credibility of the witnesses, and the weight given to testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd). We do not reevaluate the weight and credibility of the evidence, nor do we substitute our own judgment for the trier of fact. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc); *Beckham*, 29 S.W.3d at 151. Instead, we consider whether the jury reached a rational decision. *Beckham*, 29 S.W.3d at 151.

In a factual sufficiency review, we review the evidence in a neutral light to determine whether the evidence is so weak that the jury's verdict seems clearly wrong and manifestly unjust or is against the great weight and preponderance of the evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). This Court will not reverse the jury's verdict unless we can say with some objective basis in the record that the great weight and preponderance of the evidence contradicts the verdict. *Id.* at 417. Morever, unless the record clearly reveals that a different result is appropriate, we must defer to the fact finder's determination concerning what weight to give contradictory testimony. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

The State is not required to present direct evidence, such as eyewitness testimony, to establish guilt. *See Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13; *see Guevara*, 152 S.W.3d at 49. The law does not require that each fact "point directly and independently to the guilt of the appellant, as long as the cumulative effect of all the incriminating facts is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13; *see Guevara*, 152 S.W.3d at 49.

Both legal and factual sufficiency are measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd).

### III. BURGLARY OF A HABITATION

By his first issue, Lopez argues that the evidence supporting his conviction for burglary of a habitation is legally and factually insufficient. Specifically, Lopez argues that the evidence supporting his burglary conviction is insufficient because the alleged burglaries took place over a long period of time, and the State did not prove that he ever entered the Vegas' house. Lopez further argues that, at best, the State only proved that he was in possession of stolen goods. We disagree.

### A. Applicable Law

A person commits burglary of a habitation if, without the effective consent of the owner, he "enters a building or habitation and commits or attempts to commit a felony, theft, or an assault." TEX. PENAL CODE ANN. § 30.02(a)(3). Intent may "be inferred from

6

circumstantial evidence such as acts, words, and the conduct of the appellant." *Guevara*, 152 S.W.3d at 50.

The Texas Court of Criminal Appeals has recently held that juries may "draw multiple reasonable inferences as long as each inference is supported by evidence presented at trial"; however, a jury is "not permitted to draw conclusions based on speculation." *Hooper*, 214 S.W.3d at 15-16. Morever, this Court has stated the following:

> "It is not required that the circumstances should, to a moral certainty, actually exclude every hypothesis that the act may have been committed by another person, but that the hypothesis is a reasonable one consistent with the circumstances and the facts proved. (Citations omitted[.]) Each fact need not point directly and independently to the guilt of the accused, as the cumulative effect of all the incriminating facts may be sufficient to support the evidence. (Citations omitted[.]) However, proof which amounts only to a strong suspicion or mere probability is insufficient."

*Smith v. State*, 754 S.W.2d 414, 415 (Tex. App.–Corpus Christi 1988, no pet.) (quoting *Carlsen v. State*, 654 S.W.2d 444, 447 (Tex. Crim. App. 1983)); *see Castillo v. State*, 739 S.W.2d 280, 288 (Tex. Crim. App. 1987). "When a defendant is found in recent, unexplained possession of items taken in a burglary, that evidence is sufficient to convict for burglary." *Smith*, 754 S.W.2d at 416; *see Poncio v. State*, 185 S.W.3d 904, 905 (Tex. Crim. App. 2006) ("[A] defendant's unexplained possession of property recently stolen in a burglary permits an inference that the defendant is the one who committed the burglary."); *see also Vela v. State*, 771 S.W.3d 659, 661 (Tex. App.–Corpus Christi 1989, pet. ref'd) (holding that "[p]ossession of recently stolen property . . . does not create a presumption of guilt but merely an inference of guilt [of burglary] and the evidence must meet the applicable circumstantial evidence standard"). Furthermore, in *Hardage v. State*, the court of criminal appeals held that the "unexplained possession of . . . stolen articles

7

seven months after the burglary was sufficiently 'recent' to bring this case within the rule and support the conviction." 552 S.W.2d 837, 839-40 (Tex. Crim. App. 1977) (stating that determining whether the interval of time between the theft of property and the possession by the accused is recent or remote "depends on the facts of the particular case, including the character of the property stolen, the test of recency being: was the interval so short as to render it morally or reasonably certain that there could have been no intermediate change of possession").

## B.    Discussion

In the instant case, the record does not indicate that Lopez ever gave an explanation for his possession of the items stolen from the Vegas's house. Through the questioning of the Vegas, Lopez tried to elicit testimony that the Vegas had possibly hired him to mow their lawn, which might have supported a reasonable explanation for the cashing of the check and his usage of the lawnmower and edger. However, this Court has stated that "[a]n explanation made at the time of trial is not controlling." *Smith*, 754 S.W.2d at 416. Furthermore, the Vegas denied ever hiring Lopez to do any work for them. They also noted that they had seen Lopez wandering through the neighborhood on occasion and that they did not know him personally.

The Vegas also testified that several items had been stolen from their house from November 2007 to February 2008, a span of approximately four months, and that Lopez cashed a forged check for $50.00. The Vegas recognized pictures of a Craftsman lawnmower and Black and Decker edger that were admitted into evidence and noted that the lawnmower and edger were theirs. Several witnesses testified that a search of Leads Online indicated that Lopez had pawned the lawnmower and edger at the local EZ Pawn

8

store. A receipt identifying the items and Lopez by name was admitted into evidence. Officer Billiot testified that he searched the Vegas's house and determined that a boarded window on the side of the house that was broken was the point of entry for the burglar. Both Luis and Lucila corroborated Officer Billiot's testimony by stating that they observed the boarded window to be damaged when they started noticing that items from their house were missing. Luis seemed to offer contradictory testimony by stating that he remembered the window being locked and that the window had been shattered at the time in question. However, the resolution of this apparent contradiction in the testimony was within the province of the jury, and we must defer to the jury's resolution of the conflict. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record supports conflicting inferences, we presume that the fact finder resolved the conflicts in favor of the prosecution and therefore defer to that determination.") (citing *Jackson*, 443 U.S. at 326).

In addition, Officer Trevino testified that he encountered Lopez at the EZ Pawn store, and when he attempted to arrest him, Lopez took a fighting stance and eventually fled the scene. Officer Trevino also testified that: (1) Lopez was hiding under a bed when police finally caught up with him; (2) Lopez was arrested in his uncle's trailer which is situated on his grandmother's property; (3) Lopez's grandmother's property is situated almost directly behind the Vegas's house; and (4) when Lopez was arrested, he had the Vegas's checkbook in his possession. Because evidence was presented regarding Lopez's flight to escape apprehension, and because Lopez was found hiding underneath a bed when the police arrived at his uncle's trailer, the jury could have inferred Lopez's consciousness of guilt from his efforts to avoid apprehension shortly after the offense. *See Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994), *overruled in part on other*

9

*grounds by Tennard v. Dretke*, 542 U.S. 274 (2004) (holding that evidence of flight is admissible as a circumstance from which a jury may draw an inference of guilt); *Hernandez v. State*, 939 S.W.2d 173, 178 (Tex. Crim. App. 1997) (en banc) (same); *see also Burnett v. State*, No. 13-03-600-CR, 2005 Tex. App. LEXIS 5647, at **9-10 (Tex. App.–Corpus Christi July 21, 2005, no pet.) (mem. op., not designated for publication).

Based on the foregoing, we conclude that the jury was rational in inferring that Lopez had burglarized the Vegas's house given that: (1) several stolen items, identified by the Vegas, were either cashed or pawned by Lopez; (2) Lopez fled or hid from authorities when confronted; and (3) Lopez was in possession of the Vegas's checkbook at the time of arrest. *See Hooper*, 214 S.W.3d at 15-16; *Hernandez*, 939 S.W.2d at 178; *Bigby*, 892 S.W.2d at 883; *Beckham*, 29 S.W.3d at 151; *see also Burnett*, 2005 Tex. App. LEXIS 5647, at **9-10. We further conclude that the cumulative effect of all the incriminating facts is legally sufficient to support Lopez's conviction for burglary of a habitation. *See Hooper*, 214 S.W.3d at 13; *see also Guevara*, 152 S.W.3d at 49. Additionally, in viewing the evidence in a neutral light, we cannot say that the evidence is so weak that the jury's verdict seems clearly wrong and manifestly unjust or is against the great weight and preponderance of the evidence. *See Watson*, 204 S.W.3d at 414-15. Accordingly, we find that the evidence supporting Lopez's burglary conviction is legally and factually sufficient; we overrule Lopez's first issue.

## IV. FORGERY

By his second issue, Lopez asserts that the evidence supporting his conviction for forgery is legally and factually insufficient because the evidence demonstrates that he did not "execute" a check but merely "passed" a check from the Vegas' checkbook. Lopez

10

argues that the punishment would not change if we were to conclude that he merely "passed" a check from the Vegas' checkbook, but that the judgment must be modified to reflect the offense supported by the record. The State contends that this issue was not preserved for appeal because Lopez failed to timely object or file a motion to quash the indictment. The State also argues that the indictment tracked the language contained in the forgery statute; thus, the evidence supporting Lopez's forgery conviction is legally and factually sufficient.

## A.    Applicable Law

A person commits forgery if he "forges a writing with intent to defraud or harm another." TEX. PENAL CODE ANN. § 32.21(b); *see Ex parte Porter*, 827 S.W.2d 324, 332 (Tex. Crim. App. 1992). Section 32.21 of the penal code further provides that "forge" means "to alter, make, complete, execute, or authenticate so that it purports . . . to be the act of another who did not authorize that act." TEX. PENAL CODE ANN. § 32.21(a)(1)(A)(i). Proof of intent to defraud is derivative of other elements; thus, in a forgery case, the culpable mental state of "intent to defraud or harm" can be inferred if the State proves that the defendant knew that the writing in question was forged. *See Huntley v. State*, 4 S.W.3d 813, 814 (Tex. App.–Houston [1st Dist.] 1999, pet. ref'd) (op. on reh'g) (en banc); *see also Flowers v. State*, No. 13-05-004-CR, 2008 Tex. App. LEXIS 277, at *5 (Tex. App.–Corpus Christi Jan. 10, 2008, no pet.) (mem. op. on remand, not designated for publication).

## B.    Discussion

Generally, when a term is statutorily defined, it need not be further alleged in the indictment. *See Geter v. State*, 779 S.W.2d 403, 405 (Tex. Crim. App. 1989); *see also*

11

*Sierra v. State*, No. 13-04-623-CR, 2008 Tex. App. LEXIS 4803, at \*\*22-23 (Tex. App.–Corpus Christi June 26, 2008, no pet.) (mem. op., not designated for publication); *Adesiyan v. State*, No. 01-04-00494-CR, 2005 Tex. App. LEXIS 6382, at \*6 (Tex. App.–Houston [1st Dist.] Aug. 11, 2005, pet. ref'd) (mem. op., not designated for publication). However, if the statutory term provides for more than one manner or means to commit that act or omission, then, upon a timely request, the State must allege the particular manner or means it seeks to establish. *See Geter*, 779 S.W.2d at 405-06; *see also Sierra*, 2008 Tex. App. LEXIS 4803, at \*\*22-23; *Adesiyan*, 2005 Tex. App. LEXIS 6382, at \*7. As noted earlier, the term "forge" within section 32.21 of the penal code means "to alter, make, complete, execute, or authenticate so that it purports . . . to be the act of another who did not authorize that act." *See* TEX. PENAL CODE ANN. § 32.21(a)(1)(A)(i). Therefore, because the term "forge" is defined within the penal code, the State was not required to allege the particular manner or means to commit the offense unless it was timely requested by Lopez. *See Geter*, 779 S.W.2d at 405-06.

The record does not reflect that Lopez made a timely request for the State to allege the particular manner and means it sought to establish. In fact, Lopez did not file a motion to quash the indictment or make a timely objection alleging that the true manner or means of committing the forgery was passing the Vegas's check rather than executing the check. Therefore, because Lopez failed to timely request that the State allege the particular manner or means that it sought to establish, and because the State was only required to allege in the indictment that Lopez "forge[d] a writing with intent to defraud or harm another," TEX. PENAL CODE ANN. § 32.21(b), we conclude that the language in the indictment stating that Lopez "executed" the check was surplusage and did not prejudice Lopez's substantial rights. *See* TEX. CODE CRIM. PROC. ANN. art. 21.19 (Vernon 2003) ("An indictment shall not be held insufficient, nor shall the trial, judgment or other proceedings

12

thereon be affected, by reason of any defect of form which does not prejudice the substantial rights of the defendant."); *see also Ex parte Porter*, 827 S.W.2d at 332 (holding that the State need only allege in an indictment that defendant forged a writing with intent to defraud or harm another and that additional language, including language from section 32.21(a) of the penal code, in the forgery allegation contained in the indictment is surplusage). Thus, error, if any, in the indictment was waived. *See* TEX. R. APP. P. 33.1; *see also Geter*, 779 S.W.2d at 405-06.

In any event, assuming, arguendo, that Lopez had preserved this issue for appeal, we note that the record reflects that Lopez stole the Vegas's checkbook, made out a check to himself in the amount of $50.00, forged Lucila's signature, and passed it to an H.E.B. grocery store employee to be cashed. The Vegas testified at trial that they did not pay Lopez by check or authorize him to cash a check on the Vegas's account. Therefore, we conclude that the jury was rational in concluding that, by signing Lucila's name to the stolen check and passing it to the H.E.B. grocery store, Lopez executed the check with intent to defraud the Vegas. *See* TEX. PENAL CODE ANN. § 32.21(a)(1)(A)(I), (b); BLACK'S LAW DICTIONARY 467 (7th ed. 2000) (noting that "execute" is defined as "[t]o change (as a legal interest) from one form to another" or "[t]o make (a legal document) valid by signing; to bring (a legal document) into its final, legally enforceable form"); *Beckham*, 29 S.W.3d at 151; *see also Flowers*, 2008 Tex. App. LEXIS 277, at *5 (noting that a defendant executes a check by signing another's name to it, i.e. forging the document, and then passing it to another). Thus, viewing the evidence in the light most favorable to the jury's verdict, we find that the evidence supporting Lopez's forgery conviction is legally sufficient. *See*

*Hooper*, 214 S.W.3d at 13; *Escamilla*, 143 S.W.3d at 817. Furthermore, viewing the evidence in a neutral light, we cannot say that the evidence supporting Lopez's forgery conviction is so weak that the jury's verdict seems clearly wrong and manifestly unjust or is against the great weight and preponderance of the evidence; therefore, the evidence is factually sufficient. *See Watson*, 204 S.W.3d at 414-15. Accordingly, we overrule Lopez's second issue.

## V. Conclusion

Having overruled both of Lopez's issues, we affirm the judgment of the trial court.

_____
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
25th day of March, 2010.

14